UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, | Case No. 2:15-CV-1914 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| SIERRA RANCH HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of New York Mellon's ("BNYM") motion for summary judgment. (ECF No. 70). Defendants Sierra Ranch Homeowners Association ("Sierra Ranch") and SFR Investments Pool 1, LLC ("SFR") filed responses (ECF Nos. 77, 80), to which BNYM replied (ECF Nos. 85, 86).

Also before the court is defendant Sierra Ranch's motion for summary judgment. (ECF No. 81). Plaintiff BNYM filed a response (ECF No. 88), to which Sierra Ranch replied (ECF No. 96).[1]

Also before the court is defendant SFR's motion for summary judgment. (ECF No. 82). Plaintiff BNYM filed a response (ECF No. 87), to which SFR replied (ECF No. 93).

---

[1] Sierra Ranch filed supplemental authorities to support its motion for summary judgment (ECF No. 102) without leave of the court in violation of Local Rule 7-2. Thus, at this time, the court will strike Sierra Ranch's supplemental briefing. *See, e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts have inherent power to control their own dockets); *see also* LR 7-2(g) ("The judge may strike supplemental filings made without leave of court.").

**James C. Mahan**
**U.S. District Judge**

Also before the court is defendant SFR's motion to certify a question of law to the Nevada Supreme Court (ECF No. 91), which defendant Sierra Ranch joined (ECF No. 97). Plaintiff BNYM filed a response (ECF No. 98), to which SFR and Sierra Ranch replied (ECF No. 99).

**I.  Facts**

The present case involves a dispute over real property located at 308 Iron Summit Avenue, N. Las Vegas, Nevada (the "property"). (ECF No. 1 at 3). Kari Krejci (the "borrower") purchased the property on May 2, 2007. (*Id.*). The borrower financed the purchase with a $262,750.00 loan that was secured by a deed of trust recorded on May 4, 2011. (*Id.*).

On May 19, 2011, the deed of trust was assigned to BNYM, via an assignment of the same. (*Id.*).

On August 15, 2011, Sierra Ranch, through its agent, recorded a notice of delinquent assessment lien. (*Id.*). The notice asserted that the borrower owed Sierra Ranch $2,184.06 in fees. (*Id.*).

On November 15, 2011, Sierra Ranch, through its agent, recorded a notice of default and election to sell to satisfy the delinquent assessment lien. (*Id.* at 5). The notice stated that the borrower owed Sierra Ranch $3,531.69 to satisfy the outstanding balance of association fees on the property. (*Id.*).

On October 2, 2012, Sierra Ranch recorded a notice of trustee's sale through its agent. (*Id.*). The notice asserted that the borrower owed Sierra Ranch $6,315.69 in fees. (*Id.*). The trustee's sale would occur on December 6, 2012. (*Id.*).

On December 12, 2013, Sierra Ranch conducted the trustee's sale, and SFR was the highest bidder, purchasing the property for $14,000.00. (ECF No. 37 at 5). The foreclosure deed was recorded on December 23, 2013. (ECF No. 1 at 6).

BNYM filed a complaint on October 6, 2015, asserting five (5) claims against Sierra Ranch and SFR: (1) quiet title/declaratory judgment; (2) injunctive relief against SFR; (3) breach of Nevada Revised Statute ("NRS") 116.1113 against Sierra Ranch; (4) wrongful foreclosure against Sierra Ranch; and (5) deceptive trade practices against Sierra Ranch. (ECF No. 1).

James C. Mahan
U.S. District Judge

- 2 -

On May 16, 2015, SFR filed an answer and counterclaim asserting three claims for relief against BNYM and the borrower: (1) declaratory relief/quiet title; (2) preliminary and permanent injunction; and (3) slander of title. (ECF No. 37).

Sierra Ranch and SFR filed motions to dismiss BNYM's complaint. (ECF Nos. 10, 22). On July 25, 2016, the court denied both motions to dismiss. (ECF No. 60).

In the instant motions, BNYM, Sierra Ranch, and SFR move for summary judgment (ECF Nos. 70, 81, 82), and SFR moves to certify a question of law to the Nevada Supreme Court (ECF No. 91).

## II.    Legal Standards

### A. *Motion for summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

**James C. Mahan**
**U.S. District Judge**

- 3 -

1   By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

### B. Certify question of law to the Nevada Supreme Court

The Nevada Rules of Appellate Procedure provide that the Supreme Court of Nevada has the power to answer "questions of [state] law . . . which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of [Nevada]." Nev. R. App. P. 5(a).

The Nevada Supreme Court "may answer questions of law certified [] by a federal court when (1) [the] answers to the certified questions may be determinative of part of the federal case, (2) there is no clearly controlling Nevada precedent, and (3) the answers to the certified questions will help settle important questions of law. *See, e.g.*, *Hartford Fire Ins. Co. v. Tr. of Const. Indus.*, 208 P.3d 884, 888 (Nev. 2009).

Where the question does not impact the merits of a claim pending before the certifying court, the question should not be certified to the Supreme Court. *See* Nev. R. App. P. 5(a) (requiring that certified question be "determinative"); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.2d 1161, 1164 (Nev. 2006) (declining to answer certified questions where "answers to the questions posed [] would not 'be determinative' of any part of the case"). "The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003).

Federal courts have discretion to certify questions of state law. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). "Resort to certification is not mandatory where state law is unclear on a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008) (citing *Lehman Bros.*, 416 U.S. at 390–91). Generally, "[w]hen a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

Further, a federal court may decline to certify a question where controlling precedent is available for guidance. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1041 (9th Cir. 2014); *see also Kehoe v. Aurora Loan Servs., LLC*, No. 3:10-cv-256-RCJ-RAM; 2010 WL

4286331, at *11 (D. Nev. Oct. 20, 2010) (declining to certify question to Nevada Supreme Court where statutory language was sufficiently clear for the court to apply).

Finally, a party must show "particularly compelling reasons" for certification when that party first requests it after losing on an issue. *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) ("Ordinarily such a movant should not be allowed a second chance at victory when, as here, the district court employed a reasonable interpretation of state law.").

### III. Discussion

#### A. *Motions for summary judgment*[2] (ECF Nos. 70, 81, 82)

##### 1. *Preliminary considerations*

As an initial matter, the court dismisses, without prejudice, claims two (2) through five (5) of BNYM's complaint (ECF No. 1), and claims two (2) and three (3) of SFR's answer, counterclaim, and crossclaim (ECF No. 37) for the following reasons.

###### i. *Injunctive relief*

BNYM's claim for injunctive relief (claim 2) and SFR's preliminary and permanent injunction claim (claim 2) are dismissed without prejudice because the court follows the well-settled rule that a claim for injunctive relief standing alone is not a cause of action. *See, e.g.*, *In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

. . .

. . .

---

[2] The court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 70-2); assignment of deed of trust (ECF No. 70-3; assigning the first deed of trust to BNYM); notice of delinquent assessment (ECF No. 70-4); notice of default and election to sell (ECF No. 70-5); notice of foreclosure sale under notice of delinquent assessment (ECF No. 70-7); and foreclosure deed (ECF No. 70-8). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

**James C. Mahan**
**U.S. District Judge**

- 6 -

*ii.    Administrative remedies*

Likewise, BNYM's third claim for breach of NRS 116.1113 against Sierra Ranch and its fourth claim for wrongful foreclosure against Sierra Ranch, and SFR's third claim for slander of title against BNYM are dismissed without prejudice for failure to mediate pursuant to NRS 38.330. *See, e.g.*, Nev. Rev. Stat. § 38.330(1); *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013) (holding that slander of title claims are subject to NRS 38.310 and must be submitted to mediation prior to being brought in district court).  Subsection (1) of NRS 38.310 sets forth prerequisites for commencing a civil action and provides, in relevant part:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1).  Subsection (2) continues by stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." Nev. Rev. Stat. § 38.310(2).

BNYM's breach of NRS 116.1113 claim clearly alleges NRS violations, which require an interpretation of the regulations and statutes that contained conditions and restrictions applicable to the property so as to fall within the scope of NRS 38.310.  (ECF No. 1).  Therefore, the court will dismiss BNYM's breach of NRS 116.1113 claim for failing to exhaust all available administrative remedies prior to commencing a suit in district court.

Similarly, "[a] wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P.*, 310 P.3d at 559 (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12-CV-1367-JCM-PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559.  "This type of interpretation falls under NRS 38.310." *Id.* Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to

residential property." *Id.* at 558. Based on the foregoing, the court will also dismiss BNYM's wrongful foreclosure claim for failing to exhaust administrative remedies.

As for SFR's slander of title claim, "[s]lander of title involves false and malicious communications that disparage a person's title in land and cause special damages." *Id.* at 559. Further, "slander of title does not infringe upon an individual's right to use or dispose of his or her property." *Id.* Thus, slander of title is a civil action under NRS 39.300(3) and subject to mediation pursuant to NRS 38.310. *Id.* As a result, SFR's slander of title claim will similarly be dismissed for failing to exhaust all available administrative remedies.

### iii.   Nev. Rev. Stat. § 598

Lastly, BNYM alleges a claim for deceptive trade practices against Sierra Ranch (claim 5). (ECF No. 1 at 12–13). BNYM contends that Sierra Ranch "falsely represented the amount of the superpriority portion of its lien" in the recorded notices. (*Id.* at 12). In addition, BNYM alleges that Sierra Ranch also falsely represented pertinent information in the recorded trustee's deed upon sale, in violation of NRS 598.0915(15), 598.092(8), and 598.0923(2)–(3). (*Id.* at 13).

Subsection (15) of NRS 598.0915 and subsection (8) of NRS 598.092 define deceptive trade practice as a person, in the course of his or her business or occupation, who: "[k]nowingly makes [a] false representation in a transaction"; "[k]nowingly misrepresents the legal rights, obligations or remedies of a party to a transaction"; or "[u]ses coercion, duress or intimidation in a transaction." *See* Nev. Rev. Stat. §§ 598.0915(15), 598.092(8). The Ninth Circuit has held that allegations of fraud must be pled with particularity as to the "time, place, and content of an alleged misrepresentation." *Yourish v. Cal. Amplifier*, 191 F.3d 939, 993 (9th Cir. 1999); *see also* Fed. R. Civ. P. 9(b).

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)

James C. Mahan
U.S. District Judge

- 8 -

1  (citations omitted).  "The complaint must specify such facts as the times, dates, places, benefits
2  received, and other details of the alleged fraudulent activity." *Id.* (citations omitted).

3  Here, BNYM's complaint has failed to plead its deceptive trade practices claim against
4  Sierra Ranch with the requisite particularity.  In particular, BNYM fails to set forth sufficient facts
5  detailing how Sierra Ranch misrepresented the amounts due in the recorded notices.  *See* (ECF
6  No. 1).

7  Further, NRS Chapter 598 governs deceptive trade practices in the sale and lease of
8  consumer goods and services.  "NRS 598 is not made expressly applicable in the context of
9  obtaining a home loan secured by real property or the foreclosure thereof." *Fung Ying Leung v.*
10 *Mortg. Elec. Registration Sys., Inc.*, No. 2:12-CV-1393 JCM VCF, 2013 WL 237225, at *3 (D.
11 Nev. Jan. 22, 2013); *see also Reyna v. Wells Fargo Bank, N.A.*, No. 2:10–cv–01730–KJD–RJJ,
12 2011 WL 2690087, at *9 (D. Nev. July 11, 2011) ("NRS § 598 . . . applies only to goods and
13 services and not to real estate loan transactions.").

14 In addition to citing NRS 598.0915(15) and 598.092(8) for support, BNYM bases its
15 deceptive trade practice claim on subsections (2) and (3) of NRS 598.0923, which similarly fails
16 to support a claim in this context.  This case involves real estate loan transactions and the sale of
17 real property, not a good or service; thus, NRS Chapter 598 provides no possibility for relief.  *See*
18 *Alexander v. Aurora Loan Servs.*, No. 2:09–cv–1790–KJD–LRL, 2010 WL 2773796, at *2 (D.
19 Nev. July 8, 2010) ("Plaintiff's claim deals with the sale or lease of real property, not goods or
20 services; therefore this statute does not provide an avenue for relief to plaintiff.").

21 Accordingly, because BNYM fails to meet the heightened pleading standard required for
22 fraud claims and because NRS Chapter 598 is not applicable to real estate loan transactions, the
23 court will dismiss BNYM's fifth claim without prejudice.

24 Based on the foregoing, BNYM's claims two (2) through five (5) and SFR's counterclaims
25 two (2) and three (3) will be dismissed without prejudice.  Therefore, the remaining claim to
26 adjudicate in the motions for summary judgment is BNYM and SFR's quiet title/declaratory relief
27 claims.
28 . . .

**James C. Mahan**
**U.S. District Judge**

### *2. Quiet title/declaratory relief*

BNYM and SFR move for summary judgment on their claims for quiet title. (ECF Nos. 70, 82), and Sierra Ranch moves for summary judgment against BNYM's quiet title/declaratory relief claim (ECF No. 81).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for claimant to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Here, BNYM asserts that summary judgment in its favor is proper because, *inter alia*, (1) the foreclosure sale is invalid because the notice scheme of NRS Chapter 116 is facially unconstitutional; (2) BANA offered to tender the superpriority portion, but Sierra Ranch wrongfully refused the offer; (3) SFR is not a bona fide purchaser; (4) the foreclosure sale was commercially unreasonable; and (5) *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 412–14 (Nev. 2014) ("*SFR Investments*"), should not be applied retroactively. (ECF No. 70).

SFR contends that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished BNYM's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF No. 82). SFR also asserts that BNYM has not met the fraud, unfairness, or oppression requirement to set aside a foreclosure sale as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105, 1112 (Nev. 2016) ("*Shadow Wood*"). (*Id.*).

Sierra Ranch echoes some of SFR's arguments in its motion for summary judgment, asserting that summary judgment is appropriate as to SFR's quiet title action. (ECF No. 81). However, some of the issues that Sierra Ranch argues in its motion for summary judgment are

James C. Mahan
U.S. District Judge

- 10 -

1  moot because the claims have been dismissed above. *See* (*id.* at 11–15). Therefore, the court will
2  consider arguments offered by Sierra Ranch as they relate to the remaining issue of quiet title.

3  Notably, the Nevada Supreme Court has held that foreclosure of an HOA superpriority lien
4  under Chapter 116 will extinguish all junior interests. *See SFR Investments*, 334 P.3d at 412–14.
5  If this court finds a properly conducted foreclosure sale, only through equity will the bank prevail.
6  However, "a court of equity acts with caution." *Hurley v. Kincaid*, 285 U.S. 95, 104 n.3 (1932).
7  Indeed, the court finds that exercising such caution is warranted in this case.

8          *i.*    Nev. Rev. Stat. § 116.31166[3]

9  SFR asserts that its submission of a foreclosure deed issued pursuant to NRS 116.31164,
10 which recites compliance with the notice provisions of NRS 116.31162 through NRS 116.31168,
11 shifts the burden to BNYM to invalidate the foreclosure sale conveying title to SFR with evidence
12 of fraud, unfairness, or oppression. (ECF No. 82).

13 Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its
14 homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives
15 priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as
16 "[a] first security interest on the unit recorded before the date on which the assessment sought to
17 be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

18 The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first
19 security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments*, the Nevada Supreme
20 Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

24 334 P.3d at 411.

25 Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority
26 lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true

---

[3] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2013, when the events giving rise to this litigation occurred.

superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale.

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[4] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood*, 366 P.3d at 1110. Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, SFR has provided the recorded trustee's deed upon sale (ECF No. 82-4), the recorded notice of delinquent assessment (ECF No. 82-6), the recorded notice of default and election to sell (ECF No. 82-8), and the recorded notice of trustee's sale (ECF No. 82-10). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore,

---

[4] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

**James C. Mahan**
**U.S. District Judge**

- 12 -

pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle SFR to success on its quiet title claim. *See id.* (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). Thus, the question remains whether BNYM demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

                *ii.*    *Due process*

BNYM contends that the HOA lien statute is unconstitutional. (ECF No. 70 at 5–9). In particular, BNYM asserts that the notice scheme of NRS Chapter 116 is facially violative of the due process clause; therefore, the foreclosure sale is invalid. (*Id.*).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required an HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"). The *Bourne Valley* court also held that the Nevada legislature's enactment of Chapter 116 constituted state action. *Id.* at 1154.

The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *Bourne Valley*, 832 F.3d at 1158. At issue in that case was the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.* (citing Nev. Rev. Stat. § 116.31163(2)). Due process requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Bourne Valley*, 832 F.3d at 1158 (citing *Mennonite*, 462 U.S. 791, 795 (1983)) (quotation omitted).

**James C. Mahan**
**U.S. District Judge**

- 13 -

1  Additionally, to raise a question of constitutionality, the party must have sufficient Article III standing, including, *inter alia*, a "personal injury fairly traceable to the . . . allegedly unlawful conduct." *Raines v. Byrd*, 117 U.S. 811, 818–19 (1997) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (emphasis omitted). Importantly, the Ninth Circuit has held that receipt of actual notice deprives a claimant of standing to raise a procedural due process claim. *Wiren v. Eide*, 542 F.2d 757, 762 (9th Cir. 1976).

Here, BNYM has not suffered an injury related to the unconstitutional provision in NRS 116.31163(2). Moreover, adequate notice was given to the interested parties prior to extinguishing a property right. *See* (ECF Nos. 82-6–13). BNYM recorded its assignment deed on May 19, 2011. (ECF No. 82-5). Sierra Ranch recorded a notice of default and election to sell on November 15, 2011, and sent (by certified mail) copies of the notice to the interested parties, including BNYM. (ECF No. 82-8). Then, on October 2, 2012, Sierra Ranch recorded notice of trustee's sale. (ECF No. 82-10).

As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put BNYM on notice that its interest was subject to pendency of action and offered all of the required information. *See* (*id.*). Therefore, the court will deny BNYM's motion for summary judgment as it relates to the quiet title issue of due process.

### iii. *Rejected tender*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980)).

1  The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues *and maintenance and nuisance-abatement charges*," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("[T]he super priority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

In the present case, BNYM argues that the foreclosure sale is void because BANA attempted to tender the superpriority amount to Sierra Ranch, which Sierra Ranch wrongfully rejected.[5] (ECF Nos. 70 at 11, 70-6). Specifically, BNYM asserts that BANA's counsel, Miles, Bauer, Bergstrom & Winters, LLP ("MBBW"), sent a letter to Sierra Ranch requesting Sierra Ranch to provide an amount for the nine-months' worth of assessments owed. (ECF No. 70-6). MBBW states that Sierra Ranch never responded to the letter dated December 28, 2011. (*Id.* at 3). Thus, BNYM asserts that Sierra Ranch wrongfully rejected BANA's offer to tender. (ECF No. 70).

In response, Sierra Ranch contends that BNYM failed to pay "any and all debts [owed]," causing BNYM's quiet title claim to fail. (ECF No. 77 at 5).

The court agrees with Sierra Ranch. BANA did not tender any portion of the amount set forth in notice of default, which stated an amount due of $3,531.69. (ECF No. 70-5). Rather, BANA sent a letter to Sierra Ranch's attorney requesting that it provide the superpriority amount BANA owed. (*Id.*).

BANA and its counsel merely presumed, without adequate support, that requesting Sierra Ranch to provide the amount for the nine-months' common assessments predating the notice of default was sufficient tender. (ECF No. 70-6); *see generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

---

[5] BANA is the beneficiary of the first deed of trust loan secured on the property. *See* (ECF No. 70-6).

**James C. Mahan**
**U.S. District Judge**

- 15 -

The notice of default recorded November 15, 2011, set forth an amount due of $3,531.69. (ECF No. 70-5). Rather than tendering the $3,531.69 due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected to send a letter requesting the amount for the nine-months' worth of assessments owed. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of default ($3,531.61), Sierra Ranch's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1). While BANA asserts that Sierra Ranch not responding to MBBW's letter was wrongful, it offers nothing in support of such assertion. (ECF No. 1 at 9).

Further, presuming that a mere offer to pay constitutes a "tender" of payment, BNYM cites to *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911 (Nev. 2016) ("*Stone Hollow*"), for the proposition that an offer to pay the superpriority amount prior to the foreclosure sale preserves the lender's deed of trust.[6] (ECF No. 70 at 10–12).

The *Stone Hollow* court, however, made no such holding. To the contrary, the *Stone Hollow* court held that "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien." 382 P.3d at 911.

Based on the foregoing, BNYM has not set forth any evidence as to a tender in a sufficient amount prior to the foreclosure sale, nor has it shown that Sierra Ranch's alleged rejection was wrongful.

###### iv. Commercially unreasonable

Now, after failing to use the legal remedies available to it to prevent the property from being sold to a third party—for example, seeking a temporary restraining order, a preliminary injunction, and filing a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BNYM seeks to profit from its own failure to follow the rules set forth in the statutes by invoking equitable relief. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she

---

[6] Notably, the case to which BNYM cites has since been vacated and remanded on other grounds. *See Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 391 P.3d 760 (Nev. 2016) (No. 64955).

James C. Mahan
U.S. District Judge

- 16 -

asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

While this court will analyze BNYM's equitable arguments under quiet title, this court notes that the failure to utilize legal remedies, as set forth above, makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

Here, BNYM argues that the foreclosure is invalid because it was commercially unreasonable. (ECF No. 70 at 13–16). In particular, BNYM contends that the Nevada Supreme Court, in *Shadow Wood*, 366 P.3d at 1116, "explained [that] an inadequate sale price alone can be sufficient to set aside a foreclosure sale if the price is 'grossly inadequate.'" *See* (ECF No. 70 at 14). In support, BNYM quotes a parenthetical explanation, which quotes the Restatement, and attempts to pass it off as the court's holding in *Shadow Wood*. *See* (*id.*).

However, the *Shadow Wood* court makes no such holding. Furthermore, no language exists in *Shadow Wood* that exhibits the Nevada Supreme Court's intention to adopt the Restatement. *Compare Shadow Wood*, 366 P.3d at 1112 (citing the Restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

Because Nevada courts have not adopted the relevant section(s) of the Restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a

James C. Mahan
U.S. District Judge

- 17 -

grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530. Therefore, BNYM has not shown fraud, unfairness, or oppression; thus, it is not entitled to have the court set aside the foreclosure sale.

In the alternative, BNYM contends that Sierra Ranch's wrongful rejection of BANA's tender satisfies the unfairness prong to support setting aside the foreclosure. (ECF No. 70 at 16). As previously discussed, *supra*, in the rejected-tender section, BNYM has not shown that Sierra Ranch's rejection was wrongful. Moreover, BNYM has not provided evidence substantiating the fraud, unfairness, or oppression element under the *Long* test, and its pre-foreclosure inaction weighs heavily against equitable relief.

Weighing the totality of the circumstances at issue here, the court finds it inequitable to set aside the foreclosure sale. Accordingly, BNYM has not shown it is entitled to summary judgment based on this issue, nor has BNYM raised a genuine dispute sufficient to withstand SFR and Sierra Ranch's motions for summary judgment.

> v. *Retroactive application of* SFR Investments

Lastly, BNYM posits that the court should not apply *SFR Investments* retroactively to extinguish its deed of trust. (*Id.* at 16–17).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*").

Thus, *SFR Investments* applies to this case. Accordingly, the court will deny BNYM's motion for summary judgment as to this question.

. . .

***B. Certify question of law to the Nevada Supreme Court*** (ECF No. 91)

SFR requests that the court certify the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 requires homeowners' associations to provide notices of default to banks even when a bank does not request notice?" (ECF No. 91 at 1–2).

The court declines to certify this question as controlling precedent is available for guidance. The Ninth Circuit, in *Bourne Valley*—which SFR cites to in its motion—explicitly answered SFR's exact question in the negative. More specifically, the Ninth Circuit held, in relevant part, as follows:

> Bourne Valley argues that Nevada Revised Statute section 116.31168(1), which incorporated section 107.090, mandated actual notice to mortgage lenders whose rights are subordinate to a homeowners' association super priority lien. . . . According to Bourne Valley, this incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request.
> . . . .
> If section 116.31168(1)'s incorporation of section 107.090 were to have required homeowners' associations to provide notice of default to mortgage lenders even absent a request, section 116.31163 and section 116.31165 would have been meaningless. We reject Bourne Valley's argument.

832 F.3d at 1159.

Accordingly, the court will deny SFR's motion to certify this question to the Nevada Supreme Court.

**IV. Conclusion**

Based on the foregoing, BNYM has failed to raise a genuine dispute so as to preclude summary judgment in favor of Sierra Ranch and SFR as to quiet title. Nor has BNYM established that it is entitled to summary judgment in its favor. Specifically, BNYM did not tender the amount provided in the notice, as the statute and the notice itself instructed, and did not meet its burden to show that BNYM is entitled to judgment as a matter of law based on due process, equity, or retroactivity.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff BNYM's motion for summary judgment (ECF No. 70) be, and the same hereby is, DENIED.

James C. Mahan
U.S. District Judge

- 19 -

1     IT IS FURTHER ORDERED that defendant Sierra Ranch's motion for summary judgment (ECF No. 81) be, and the same hereby is, GRANTED as to quiet title, but all other claims are dismissed without prejudice.

IT IS FURTHER ORDERED that defendant SFR's motion for summary judgment (ECF No. 82) be, and the same hereby is, GRANTED as to quiet title, but all other claims are dismissed without prejudice.

IT IS FURTHER ORDERED that SFR's motion certify a question of law (ECF No. 91) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Sierra Ranch's supplemental authority to its motion for summary judgment (ECF No. 102) be, and the same hereby is, STRICKEN.

The clerk shall enter judgment accordingly and close the case.

DATED July 26, 2017.

_____
UNITED STATES DISTRICT JUDGE